UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSEPH T.[1],

Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY

Defendant.
___________________________________/

Civil Action No. 25-12152

Robert J. White
United States District Judge

David R. Grand
United States Magistrate Judge

**REPORT AND RECOMMENDATION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 11, 16)**

Plaintiff Joseph T. ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying his application for Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions (ECF Nos. 11, 16), which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

## I. RECOMMENDATION

For the reasons set forth below, the Court finds that the Administrative Law Judge's ("ALJ") conclusion that Plaintiff is not disabled under the Act is supported by substantial evidence. Accordingly, the Court recommends that the Commissioner's Motion for

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

Summary Judgment **(ECF No. 16)** be **GRANTED**, Plaintiff's Motion for Summary Judgment **(ECF No. 11)** be **DENIED**, and that, pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision be **AFFIRMED**.

## II. REPORTT

### A. Background

Plaintiff was 42 years old at the time of his alleged onset of disability on January 26, 2023, and at 6'2" tall weighed approximately 295 pounds during the relevant time period. (PageID.101, 242).[2] He completed high school and at least four years of college at ITT Tech. (PageID.243). He has no past relevant work history. (PageID.125). He now alleges disability as a result of "cervical spondylosis, diabetes type 1, dupuytren's contracture, costochondritis, adjustment disorder mixed with depressed mood, [and] high blood pressure." (PageID.242).

After Plaintiff's application for SSI was denied at the initial level on July 31, 2023 (PageID.100), and on reconsideration on October 13, 2023 (PageID.109), he timely requested an administrative hearing, which was held on March 11, 2024, before ALJ Therese Tobin. (PageID.64). Plaintiff, who was represented by attorney Keegan McCorry, testified at the hearing, as did vocational expert ("VE") Darren Wright. (*Id.*). On August 20, 2024, the ALJ issued a written decision finding that Plaintiff is not disabled under the Act. (PageID.126). On May 14, 2025, the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner for purposes of this review.

---

[2] Standalone citations to "PageID.___" are all to the administrative transcript in this case, which can be found at ECF No. 7-1.

(PageID.50). Plaintiff timely filed for judicial review of the final decision on July 15, 2025. (ECF No. 1).

The Court has thoroughly reviewed the transcript in this matter, including Plaintiff's medical record, disability reports, and testimony as to his conditions and resulting limitations. Instead of summarizing that information here, the Court will make references and provide citations to the transcript as necessary in its discussion of the parties' arguments.

**B. The ALJ's Application of the Disability Framework Analysis**

Under the Act, SSI is available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work

> experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, No. 11-10593, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. § 404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps …. If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Following this five-step sequential analysis, the ALJ found that Plaintiff is not disabled under the Act. At Step One, the ALJ found that Plaintiff has not engaged in substantial gainful activity since January 26, 2023 (the application date). (PageID.115). At Step Two, the ALJ found that he has the severe impairments of osteoarthritis, depression, diabetes mellitus, cervical disorder, Dupuytren's contracture, obesity, and essential hypertension.. (*Id.*). At Step Three, the ALJ found that Plaintiff's impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment. (PageID.116).

The ALJ then assessed Plaintiff's residual functional capacity ("RFC"), concluding,

> [C]laimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except can occasionally climb ramps and stairs; can never climb ladders, ropes, and scaffolds. Can

> occasionally balance and stoop, kneel, crouch, and crawl. Can occasionally reach overhead bilaterally; can never be exposed to vibration; can never be exposed to unprotected heights and dangerous machinery; can frequently handle and finger bilaterally. He is a right-hand dominant person. He requires the option to alternate between sitting and standing after 30 minutes in either position and will take one minute to alternate between sitting and standing. He would not be off task more than 10% of the workday due to the sit/stand option. He requires an assistive device such as a cane to ambulate during the workday. He is limited to performing simple and routine tasks.

(PageID.119).

At Step Four, the ALJ found that Plaintiff has no past relevant work. (PageID.125). At Step Five, the ALJ determined, based in part on testimony provided by the VE in response to hypothetical questions, that Plaintiff is capable of performing the jobs of marker (59,000 jobs nationally); garment sorter (22,000 jobs), and classifier (55,000 jobs). (*Id.*). As a result, the ALJ concluded that Plaintiff is not disabled under the Act. (PageID.126).

**C. Standard of Review**

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted). The phrase "substantial evidence" is a "term of art …." *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (internal citations omitted). "Under the substantial-evidence standard, a court looks

to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Id*. (internal citations omitted). "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence … is 'more than a mere scintilla.'" *Id.* at 103 (internal citations omitted). Specifically, "[i]t means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (internal citations omitted).

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *See Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007); *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted).

### D. Analysis

#### 1. *Substantial Evidence Supports the ALJ's Decision Not to Include in the RFC a Limitation that Plaintiff Must Use a Cane for Balance*

In the RFC, the ALJ determined that Plaintiff "requires an assistive device such as a cane to ambulate during the workday," but Plaintiff argues that the ALJ erred by failing to include in the RFC that he must use a cane to maintain balance. (PageID.119; ECF No. 11, PageID.1662-66). Plaintiff argues that this is reversible error because the VE testified that if Plaintiff needed a cane to balance, then it would be "work preclusive." (ECF No. 11, PageID.1665-66). The Court finds the ALJ's conclusion is well-explained and supported by substantial evidence, and that Plaintiff fails to demonstrate that a cane for balance is medically necessary.

Pursuant to Social Security Ruling 96-9p,

> To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information). The adjudicator must always consider the particular facts of a case. For example, if a medically required hand-held assistive device is needed only for prolonged ambulation, walking on uneven terrain, or ascending or descending slopes, the unskilled sedentary occupational base will not ordinarily be significantly eroded.

Titles II & XVI: Determining Capability to Do Other Work-Implications of A Residual Functional Capacity for Less Than A Full Range of Sedentary Work, SSR 96-9P (S.S.A. July 2, 1996).[3] Accordingly,

> A claimant's contention that an assistive device is required does not satisfy SSR 96-9p's requirements without corresponding support in the medical record. [] An ALJ may thus find that a handheld assistive device is not medically necessary, even if a claimant regularly uses a cane, if the record evidence does not otherwise disclose the type of information SSR 96-9p requires. []

*Cline v. Comm'r of Soc. Sec.,* No. 5:24-CV-01003-BMB, 2025 WL 850272, at *8 (N.D. Ohio Mar. 18, 2025), *report and recommendation adopted*, No. 5:24-CV-01003, 2025 WL 1002189 (N.D. Ohio Apr. 3, 2025) (internal citations omitted). And "[i]t is the claimant's burden to prove through clinical evidence that a cane is medically required," including the extent of that need. *Kelley D. v. Comm'r of Soc. Sec.*, No. 1:25-CV-00773, 2026 WL 1327959, at *3 (S.D. Ohio Mar. 13, 2026) (internal quotations omitted).

Although Plaintiff suggests that the ALJ needed to separately evaluate whether he needed a cane to balance, the ALJ's discussion of the extent to which Plaintiff needs a cane necessarily includes consideration of that issue. As SSR 96-9p instructs, the ALJ should look at the "particular facts of a case" to determine to what extent Plaintiff needs a cane.

---

[3] Although SSR-96-9P is specific to an RFC "for less than a full range of sedentary work," and the RFC in the present case is light work with restrictions, it has likewise been utilized in other contexts. *See Brandy H. v. Comm'r of Soc. Sec.,* No. 3:25-CV-93, 2026 WL 691642, at *4 (S.D. Ohio Mar. 12, 2026) ("While SSR 96-9p discusses the necessity of a hand-held assistive device in the context of an RFC to perform less than a full range of sedentary work, Plaintiff fails to provide binding authority for her proposition that an ALJ cannot reply upon SSR 96-9p where he finds, as here, Plaintiff retains the RFC to perform more than sedentary work, *i.e.*, light work. The Court finds no such authority in the Sixth Circuit.").

Here, the ALJ relied on substantial evidence in supporting her conclusion that Plaintiff needs the cane *to ambulate*, and Plaintiff points to no evidence showing a cane was medically required to enable him to balance.

First, the ALJ noted that in January of 2022, Plaintiff "rose from a seated position without difficulty and ambulated without assistance. His gait was not antalgic. He was able to heel and toe walk." (PageID.120) (citing PageID.446). Similarly, the ALJ wrote that in June of 2022, Plaintiff "had a normal gait and ambulated without an assistive device. [] He was able to heel and toe walk." (PageID.121) (citing PageID.502-03).[4]

The ALJ then recognized that, a year later, Plaintiff "requested a cane in June of 2023 from his provider due to complaints of unsteadiness but there was no indication [of] the etiology of why he had balance problems." (PageID.124) (citing PageID.1622 ("Gait disorder: Start Adjustable Aluminum Cane Miscellaneous.")). Although Plaintiff objects that "etiology," or the cause of the alleged balance issues, is not relevant, the Court disagrees. If there was an etiology of balance issues, it would provide some "clinical evidence" in support of Plaintiff's contention that he needs a cane for balance. *Kelley D.*, 2026 WL 1327959, at *3. Accordingly, the absence of such evidence here and elsewhere supports the ALJ not including in the RFC that Plaintiff needs a cane for balance. Indeed, the evaluating physician's conclusion appears to be only based on Plaintiff's reported symptoms. Specifically, the evaluating doctor wrote that Plaintiff "complains of

[4] Plaintiff objects that evidence from 2022 is not relevant because he only began needing the cane in 2023. (ECF No. 11, PageID.1664). However, in addition to the evidence the ALJ discussed from 2023, the evidence from 2022 is relevant as part of his medical history.

unsteadiness at times, fell twice recently. Using a borrowed cane, which is too short for him." (PageID.1622). That same doctor notes that Plaintiff has no "swelling or deformity," "clubbing, cyanosis, or edema," nor any movement challenges she might have otherwise observed during the examination. (*Id.*). Although the visit note is only one page, Plaintiff does not point to anywhere else in the record that would corroborate his professed balance issues or need for a cane while standing.

The ALJ also writes that August 2023 "therapy records note[] he could pole trek, walk daily, and was biking more suggesting he was not as limited with walking. He also attended an art fair, went on an outing to a greenhouse, and took a trip to Traverse city, suggesting he could at least perform light work with the additional limitations noted." (PageID.124) (citing PageID.1487 [5] ("He is trying to walk daily; biking more," PageID.1496, "he went to green house since our last visit.")). Thus, as the ALJ recognized, Plaintiff's "gait difficulties were not consistent in the longitudinal records." (PageID.116) (citing PageID.444).

At the hearing, Plaintiff recounted his difficulties standing, saying that the "cervical pain" keeps him from standing up for long enough to peel "a few potatoes," even if he was leaning against a counter or other surface. (PageID.79). But the ALJ noted that Plaintiff "has no recent medical treatments for his complaints of back pain." (PageID.124). Moreover, the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence

[5] The ALJ cites PageID.1486, but PageID.1487 contains the evidence to which the ALJ refers.

and other evidence for the reasons explained in this decision," which have been discussed above. (PageID.120).

The only other medical evidence supporting Plaintiff's use of a cane is his evaluation by Nurse Practitioner-C Jinit Shah ("Shah") in June of 2023. Plaintiff cites Shah's evaluation in support of his claim that the ALJ should have specifically discussed his need for a cane to balance, but Shah's report, as discussed by the ALJ, does not support the need for a cane for balance. Indeed, the ALJ wrote that Shah "indicated the claimant's ***gait*** was unsteady without use of the assistive device," and that "the claimant was using the cane all the time for short and long distance on flat and uneven surfaces." (PageID.124) (citing PageID.1394 ("Claimant gait is Unsteady without the use of the assisting device. Claimant Is using the cane all the time for Short and long Distance on flat and uneven surfaces.")).

The ALJ also summarized several other relevant findings of Shah's exam, including:

> [Plaintiff] had decreased flexion, lateral bending, and extension of the right hip and pain with flexion, extension, and lateral bending. [] However, he was able to write, pick up a pencil, pick up a coin, make a fist, open a door, and dial a telephone. [] He had an unsteady tandem gait and heel walk. He had difficulty with pushing, pulling, carrying, stooping, and bending.

(PageID.123) (citing PageID.1392-93).

Shah's evaluation says nothing about Plaintiff's need for a cane to balance. Nor does that evaluation satisfy SSR 96-9p's requirements to demonstrate that Plaintiff needs a cane to balance. The ALJ already acknowledged and incorporated Shah's evaluation by

requiring that Plaintiff have a cane to ambulate; and neither Plaintiff's "unsteady" ***gait*** nor his report that he uses a cane for "Short and long ***Distance*** on flat and uneven surfaces," both of which relate to Plaintiff's ***walking*** abilities, undermines the ALJ's conclusion. (PageID.1394). As the *Cline* court explained, "[a]n ALJ may [] find that a handheld assistive device is not medically necessary, even if a claimant regularly uses a cane, if the record evidence does not otherwise disclose the type of information SSR 96-9p requires." *Cline v. Comm'r of Soc. Sec.*, 2025 WL 850272, at *8. This "type of information" includes "establishing the need for a hand-held assistive device to aid in walking or standing, and *describing the circumstances* for which it is needed," which Shah's report plainly does not do beyond Plaintiff's need for a cane for ambulation. SSR 96-9p, 1996 WL 374185 at *7 (emphasis added). Rather, it only recounts Plaintiff's reported use of the cane along with "unsteady" walking tests. It does not suggest that Plaintiff would need a cane for balance.

Plaintiff relies on *Cline* for his argument that he has met his burden for demonstrating the need for a cane to balance. But in *Cline*, the plaintiff presented evidence that specifically indicated that she needed a cane for balance according to the 96-9p guidelines. For example, Cline presented evidence of "her prescription for a cane; the opinions of Drs. Stine and Carrabine who opined that Cline required a cane for ambulation ***and balance***; Cline's treatment notes indicating use of a cane for ***imbalance*** and weakness; and Cline's history of falling due to muscle weakness and ***imbalance***." *Cline*, 2025 WL 850272, at *8 (emphasis added).

Unlike in *Cline*, Plaintiff here has not "produced documents demonstrating more than a subjective desire to use a cane" for balance. *Id.* Plaintiff has only presented the

prescription of a cane by one doctor who apparently relied on Plaintiff's own subjective complaint and Shah's evaluation. Importantly, the prescription did not specify the situations in which the cane would be necessary, as required by SSR 96-9p, and the only other doctor to discuss Plaintiff's need for a cane, Dr. Shah, wrote that Plaintiff only used it for walking, not for balance. (PageID.1394) ("Claimant Is using the cane all the time for Short and long Distance on flat and uneven surfaces."). Therefore, substantial evidence supports the ALJ's handling of Plaintiff's need for a cane for ambulation only, and the ALJ did not commit reversible error by not including in the RFC a requirement that Plaintiff must also use a cane for balance.

Finally, Plaintiff objects that even if he only needed a cane for short distances, the ALJ's ambulation-only finding is improper because SSR 96-9p specifies an ambulation-only finding is appropriate for someone who needs a cane "only for prolonged ambulation, walking on uneven terrain, or ascending or descending slopes," whereas Shah's report suggests Plaintiff needs the cane even for short distances. (ECF No. 11, PageID.1665) (citing SSR 96-9p, 1996 WL 374185, at *7). But this mischaracterizes the regulation. SSR 96-9p gives the list above merely as an example of actions for which "the unskilled sedentary occupational base will *not ordinarily* be significantly eroded." SSR 96-9p, 1996 WL 374185 at *7 (emphasis added). The same regulation also notes that "[t]he adjudicator must always consider the particular facts of a case." *Id.* It is the claimant's burden to provide evidence meeting 96-9p's requirements, that is, "describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information." *Id.* The ALJ then determines,

based on the record evidence, the situations in which the claimant needs a cane. Here, the ALJ supportably determined that Plaintiff needed a cane "*to ambulate* during the workday," but did not determine that Plaintiff also needed one for balance. (PageID.119) (emphasis added). Based on the ALJ's discussion of the above evidence, those determinations are supported by substantial evidence.

*2. The ALJ Did Not Commit Reversible Error in Evaluating the Medical Opinion Evidence and Imposing Mental Limitations*

Plaintiff also argues that the ALJ committed reversible error by failing to evaluate Dr. Romauldas Kriauciunas' PhD ("Dr. Kriauciunas") opinion. The Court disagrees.

Dr. Kriauciunas is one of two state agency psychological consultants that evaluated Plaintiff's record. Dr. Kriauciunas evaluated Plaintiff at the initial level of consideration and Dr. Colette Simone, Psy.D. ("Dr. Simone") evaluated Plaintiff at the reconsideration level. Dr. Kriauciunas and Dr. Simone both found that "there are no mental medically determinable impairments established." (PageID.94, 103). They both identified Plaintiff's symptoms as the same: "Sustained concentration and persistence related symptoms. Social interaction related symptoms." (PageID.95, 104). Dr. Kriauciunas didn't include much explanation, and Dr. Simone, whose findings were identical, added that "[t]he claimant alleges an adjustment disorder. However, there is no MH evidence in file, the claimant is not prescribed any psychotropic medications, and 3441 indicated no new conditions, change in activities or TX. MER indicates that MSEs are WNL." (PageID.103). Ultimately, the ALJ found Dr. Simone's opinion "unpersuasive" because "the claimant was a recovering alcoholic and treating with a therapist to maintain mental symptoms."

(PageID.124) (citing PageID.1395-1445). Contrary to Dr. Simone and Dr. Kriauciunas' opinions, the ALJ found Plaintiff had the severe impairment of depression and limited Plaintiff to "simple and routine tasks" in the RFC. (PageID.115, 119).

Although the ALJ didn't explicitly mention Dr. Kriauciunas' earlier, identical finding that Plaintiff had no medically determinable impairments related to his mental state, the law is clear that an ALJ need not specifically reference each piece of evidence in the record to show that she considered it. *Kornecky*, 167 F. App'x at 508. Moreover, the ALJ's rationale necessarily applied equally to Dr. Kriauciunas' opinion as it did to Dr. Simone's given that the two physicians' findings were identical. Plaintiff doesn't challenge the ALJ's finding that Dr. Simone's opinion is unpersuasive and it would be entirely redundant for the ALJ to have repeated the same analysis as to Dr. Kriauciunas.

Moreover, even if the ALJ's analysis of Dr. Simone's opinion didn't apply to Dr. Kriauciunas, any error would still be harmless because, contrary to Plaintiff's contention, the ALJ imposed *greater* limitations than Dr. Kriauciunas suggested. *Mosed v. Comm'r of Soc. Sec.*, No. 2:14-CV-14357, 2016 WL 6211288, at *7 (E.D. Mich. Jan. 22, 2016) *report and recommendation adopted*, No. 14-CV-14357, 2016 WL 1084679 (E.D. Mich. Mar. 21, 2016) ("Plaintiff's argument that the ALJ erred in assessing a *more restrictive* RFC than that opined by the State agency consultants is curious and unavailing."). Indeed, the fact that the ALJ included an additional restriction as to Plaintiff's mental capabilities – Dr. Kriauciunas included none – was "additive." Therefore, as in *Mosed*, the RFC imposed by the ALJ here was more restrictive than the doctor's opinion, and even if the ALJ re-evaluated Dr. Kriauciunas' opinion and found it persuasive, Plaintiff would still not be

found to be disabled. For all of these reasons, the Court finds the ALJ's failure to mention Dr. Kriauciunas' opinion is at most harmless error such that remand is inappropriate.[6] *Kornecky*, 167 F. App'x at 507 ("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that remand might lead to a different result.") (quoting *Fisher v. Bowen,* 869 F.2d 1055, 1057 (7th Cir. 1989)).

Finally, Plaintiff repeatedly accuses the ALJ of "playing doctor" because she found his depression to be a severe impairment despite the fact that no doctor's opinion in the record contained such a finding. Thus, Plaintiff argues, the ALJ should have "ordered a consultative examination to assess the Plaintiff's mental functional limitations." (ECF No. 11, PageID.1672). This argument lacks merit.

Plaintiff is again essentially complaining about the fact that the ALJ incorporated greater limitations in the RFC – here, a limitation to simple and routine tasks – than did the doctors. That alone is not a basis to remand the matter. *See Mosed*, 2016 WL 6211288, at *7. Additionally, the Sixth Circuit has clearly "rejected the argument that a residual functional capacity determination cannot be supported by substantial evidence unless a

[6] Plaintiff cites *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004), which held that an ALJ's failure to "comprehensively set forth the reasons for the weight assigned to a treating physician's opinion" could be reversible error even if the ALJ's opinion was otherwise supported by substantial evidence. As the Sixth Circuit explained in *Wilson*, this was because "20 C.F.R. § 404.1527(d)(2) requires the agency to 'give good reasons' for not giving weight to a treating physician in the context of a disability determination." *Wilson*, 378 F.3d at 544. But here, Dr. Kriauciunas was not Plaintiff's treating physician. And the Sixth Circuit has found that the "usual harmless-error rule" applies to other physicians. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 507 (6th Cir. 2006). Thus, the Court here applies the usual "harmless-error" rule, and, for the reasons stated above, the ALJ's failure to specifically address his opinion is at most harmless error.

physician offers an opinion consistent with that of the ALJ." *Mokbel-Aljahmi v. Comm'r of Soc. Sec.*, 732 F. App'x 395, 401 (6th Cir. 2018). Merely characterizing the ALJ's analysis as "playing doctor" is insufficient to show reversible error. The Sixth Circuit has held that an ALJ is not required to order a consultative examination "unless the record establishes that such an examination is *necessary* to enable the administrative law judge to make the disability decision." *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986). Because, as discussed below, the Court finds that "the evidence in the record upon which the administrative law judge based his denial of benefits fully developed the facts necessary to make that determination," the ALJ's decision should not be remanded. *Id.*

The ALJ's determination that Plaintiff had depression and should be limited to simple and routine tasks is supported by substantial evidence. The ALJ discussed that Plaintiff "reported minimal depression, some anxiety, but denied suicidal ideations" in September of 2022. (PageID.121) (citing PageID.565 ("Psychologically, he reports minimal depression, some anxiety as well as sleep disturbance.")). The ALJ also discussed Plaintiff's function report completed in March of 2023, writing that "[i]n understanding, remembering, or applying information, the claimant has a mild limitation. He alleged he does not follow written instructions too well but follows spoken instruction fairly well" and "[w]ith regard to concentrating, persisting or maintaining pace, the claimant has a moderate limitation. He can count change, handl[e] a savings account, and use checkbook or money orders. (PageID.118) (citing PageID.252, 254). The ALJ wrote that in "May of 2023, the claimant was doing well from a psychological standpoint. He was having

counseling sessions which have helped somewhat. He was maintaining sobriety from alcohol and not using other street drugs. He was working part-time in internet technology cyber security." (PageID.122) (citing PageID.1434 ("He has a history of alcohol use disorder, which is in sustained remission. He is engaged in abstinence-based, 12-step recovery regarding that… Psychologically, he is doing fairly well. He says Dr. Bialik's visits have helped him a great deal.")).

Plaintiff objects that the ALJ should have obtained an opinion from a consultant because, along with depression, Plaintiff's therapist Dr. Bialik diagnosed him with "[a]djustment disorder with mixed anxiety" and that one "mental status exam noticed that [he] had an anxious mood." (ECF No. 17, PageID.1698) (citing PageID.1422). But, in full, the record that Plaintiff points to merely says: "Mood pleasant, anxious; Affect congruent. Thoughts logical and coherent. No suicidal or homicidal thoughts." (PageID.1422). And the ALJ specifically discussed Dr. Bialik's sessions, writing that Plaintiff "was having counseling sessions which have helped somewhat," and citing to a medical visit in which Plaintiff reported that "Dr. Bialik's visits have helped him a great deal." (PageID.122, citing PageID.1434). Furthermore, the existence of a diagnosis such as "adjustment disorder," is not alone sufficient to render a claimant disabled or to require any particular limitation in his RFC. *See Dukes v. Comm'r of Soc. Sec.*, No. 10-436, 2011 U.S. Dist. LEXIS 105526 at *16, 2011 WL 4374557 (W.D. Mich. Sept. 19. 2011) *quoting McKenzie v. Comm'r of Soc. Sec.*, No. 99-3400, 2000 U.S. App. LEXIS 11791, 2000 WL 687680 at *5 (6th Cir. May 19, 2000) ("[T]he mere diagnosis of an impairment does not render an individual disabled nor does it reveal anything about the limitations, if any, it

imposes upon an individual."). The presence of one record suggesting anxiety and a diagnosis of an "adjustment disorder" does not necessitate the ALJ's further inquiry beyond her already thorough discussion of Plaintiff's mental capabilities discussed above.

For the foregoing reasons, the Court finds that the ALJ's decision as to the medical opinion evidence and Plaintiff's mental limitations is supported by substantial evidence and remand is not warranted.

## III. CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment **(ECF No. 16)** be **GRANTED**, Plaintiff's Motion for Summary Judgment **(ECF No. 11)** be **DENIED**, and the ALJ's decision be **AFFRIMED**.

Dated: August 10, 2026
Ann Arbor, Michigan

s/David R. Grand
DAVID R. GRAND
United States Magistrate Judge

## NOTICE TO THE PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir.1991); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir.1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d

390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir.1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 10, 2026.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager